WILLIAM WEINERT et al., as Stockholders of March Gold, Inc., Suing on Behalf of Themselves and on Behalf of All Other Stockholders of Said Corporation, Respondents, *v.* EDWARD G. KINKEL et al., Appellants, et al., Defendants.

Fourth Department, June 27, 1945.

*James O. Moore, Sr., Carl Fogle, Charles F. Blair* and *Edward G. Kinkel* for appellants.

*Frank G. Raichle* and *Emery S. Tucker* for respondents.

*Per Curiam.* The report of the Official Referee, which we approve, fully justifies the judgment entered herein. Fairly construed, his report shows a breach, by these defendants, of their fiduciary duty as directors of March Gold, Inc., which owned fourteen fifteenths of the stock of March Gold, Ltd. The record discloses that defendants, as directors of the two companies, dominated both corporations, but did not, in the conduct of the corporate affairs, treat them as separate entities. In 1931 Limited authorized the issuance of 7% bonds in the amount of $150,000 dated July 1, 1931, due in five years, secured by a mortgage upon its mining properties. As indicated by the minutes of the meeting of Limited's directors of March 27, 1933, but a small part of these bonds had actually been issued on that date. Previously defendants had acquired an interest in another mining property adjoining Limited's property on the north, and known as the Ankerite mine. Between March 27, 1933, and April 11th of that year these defendants, acting as directors of Limited, caused to be issued to themselves for indebtedness due them from both Limited and Incorporated, bonds of Limited aggregating approximately $134,000. These bonds, together with all other bonds previously issued, either for cash to others than directors, or to defendants for indebtedness on account of money loaned or services rendered to either corporation, aggregating in all $148,500, were then pledged with the Royal Bank of Canada, Toronto, Ontario, to secure Limited's note, upon which there was then due approximately $25,000. Defendants were guarantors of that obligation. At the time the bonds were so issued to them and pledged defendants knew that Limited could not meet the payments of interest, principal and sinking fund requirements of the issue. They then intended an immediate foreclosure of the mortgage. They did not disclose to Incorporated's stockholders what they had done, nor their intention to bring about an immediate foreclosure, although they knew that a minority group of Incorporated's stockholders had organized a Protective Committee, then investigating the affairs, through public auditors, of both corporations, with a view to protecting Limited's properties. After pledging the bonds to the bank in April, 1933, defendants on May 10, 1933, as the owners of bonds in an amount authorized so to do, requested the trustee under the mortgage to foreclose it. Accordingly a demand was served by the trustee upon Limited by service upon one of the individual defendants as an officer and director of Limited. This demand alleged defaults in the payment of interest and sinking fund requirements, which

accelerated the maturity of the whole issue. The default set forth in the demand exceeded considerably the amount of the default then existing. Defendants caused the foreclosure to proceed rapidly, but gave no notice of it to Incorporated's stockholders. Defendants employed a Canadian attorney to represent Limited, who admitted, in the foreclosure, the defaults as alleged in the trustee's demand. The property was sold early in August, 1933, defendants bidding it in for $101,000, paying their bid with $100,000 of Limited bonds and $1,000 in cash. The Canadian court confirmed the sale. Subsequently defendants organized another corporation Marbuan Gold Mines, Limited, to which they caused the properties of Limited, so acquired by them, to be conveyed, in exchange for 500,000 shares of the capital stock of Marbuan, which had an authorized capital of 1,000,000 shares. Marbuan then operated the former Limited's properties for two years, when these defendants caused Marbuan to be merged with Buffalo Ankerite Gold Mines, Ltd., which owned the Ankerite mining property adjoining Marbuan on the north. This merger resulted in a considerable profit to defendants.

The Official Referee found that the actual amount which defendants paid for the property of Limited on the foreclosure was $143,746.45, but that its true value on the date of foreclosure sale was $200,000.

We have reached the conclusion that the findings as to the indebtedness of Limited and Incorporated to defendants, which made up the greater part of the consideration so found to have been paid by defendants for Limited's properties, was generous to them. We have reached the same conclusion as to the finding on value of $200,000.

At the time when defendants caused to be issued to themselves for an antecedent indebtedness the bonds of Limited, they did so for the express purpose of using them to pay on any bid they might make on the contemplated immediate foreclosure. They knew that armed with these bonds they were in a superior position in the event of competitive bidding. We have reached the conclusion that, taking into consideration all the circumstances attendant upon this transaction these defendants breached their fiduciary duty, as directors, to Incorporated and its stockholders, thereby damaging Incorporated by lessening the value of its assets.

Assuming that, inferentially, the holdings in *General Rubber Co.* v. *Benedict* (215 N. Y. 18) and *Matter of Auditore* (249 N. Y. 335) would preclude the bringing of the present

action, we do not believe that such a rule is available to these defendants, because, by their own conduct of the affairs of the two corporations, of which they were common directors, they entirely disregarded the separate entity of each, and so intermingled the affairs of each corporation, that the idea of each as a separate entity became a mere legal fiction.

We do not consider that the Canadian judgment of foreclosure operates as an estoppel precluding a recovery in this action. (*Schuylkill Fuel Corp.* v. *Nieberg Realty Corp.*, 250 N. Y. 304, 306, 307; *Sielcken-Schwarz* v. *American Factors, Ltd.*, 265 N. Y. 239, 243.)

Neither do we find any abuse of discretion in refusing an allowance to defendants for expenses pursuant to section 322 of the Civil Practice Act, nor in allowing to plaintiffs an extra allowance for costs.

The judgment and orders from which appeals have been taken should be affirmed, with costs.

All concur. Present — TAYLOR, P. J., DOWLING, McCURN, LARKIN and LOVE, JJ.

Judgment and orders affirmed, with costs. [See *post*, p. 924.]